EDWARD B. WATSON,  } *Associate Justices.*
JOHN B. WALDO,

---

### KITCHERSIDE *v.* MYERS.

PRACTICE—LAW—EQUITY.—An objection to the jurisdiction in equity, in the absence of a demurrer on the ground of an adequate remedy at law, comes too late after the defendant has, by his answer, put himself upon the merits, and the pleadings suggest no such defense.

PUBLIC LANDS—HOMESTEAD.—Where public lands are subject to be taken under the homestead acts, and a party has taken the initial to homestead, he has a right to the possession of the land for the purpose of doing the required acts to secure his title, and if he is prevented from taking possession by one without legal title, or equal equitable claim, he may ask a court of equity to put him in possession of his rights.

APPEAL from Yamhill County.

*E. C. Bradshaw, James McCain and W. D. Fenton,* for appellant.

*H. & A. M. Hurley,* for respondent.

By the Court, LORD, C. J.:

From the pleadings and evidence, it appears that the defendant and those under whom he claims have been in the open and actual possession of the land in controversy since the year 1855, and that this land was included in the original notification of John Myers under the Donation Act, but

10 21
21 117
27 13

10 21
a27 171

10 21
f33 343

10 21
38 283

10 21
39 17

10 21
41 134

10 21
42 620

10 21
43 248
e43 251

10 21
e45 130

that subsequently he filed a corrected notification in which the land in dispute was not included, but relinquished, and that after due proof of residence and cultivation, he received from the proper officer a donation certificate, and finally a patent, as donee of the United States, in both of which, the land described corresponded to the description in the corrected notification, and did not include the land in controversy. Nor is there any evidence to show that the land in dispute was omitted in the description of the title papers of John Myers, deceased, as alleged, by reason of a mutual mistake between himself and the officers of the land department of the government, nor of any proceedings begun, heard or determined in the land department for the purpose of correcting such alleged mistake, and including the land in dispute in his donation claim.

The defendant has no other title to this land than bare occupancy, nor had those under whom he claims. The legal title is in the United States, so far at least as the defendant is concerned, and whatever rights he has, if any, are derived from such occupancy, and the occupancy of those under whom he claims his right to the possession of this particular land. The record of the land office shows this to be unoccupied surveyed public lands, subject to be taken as homestead under the act of congress.

In 1878 the plaintiff, after filing the necessary affidavits and paying the requisite fee, received his certificate therefor, and entered upon the tract of land described in the complaint as a homestead—the east half of which is the land in dispute, and in the actual possession of the defendant—and proceeded to do the necessary acts of residence and cultivation, in order to comply with the terms of the homestead acts, and to perfect his title to the land. But it is clear from the evidence that the defendant was, and now is in the

actual possession of the east half of the whole tract which the plaintiff has taken as a homestead, and that he prevented and forcibly resisted the plaintiff from taking possession of the land in controversy, and was cutting down the timber, to the irreparable injury of the rights of the plaintiff in the same. It appears then that the plaintiff has never had possession of the land in question, although it is included in his entry, and so stated in the certificate of the officer of the land office, and that the legal title as to the plaintiff is in the United States. So as to both of these parties the legal title to the land in controversy is in the United States, and whatever right either party has to the land, not being legal, must be equitable, if anything, and the question to be decided must necessarily be, who has the superior equity, or the better right to the possession of the land? This virtually disposes of the objections, so urgently insisted upon, that a court of equity would not take jurisdiction, because the plaintiff had an adequate remedy at law, by an action for trespass, or in ejectment. Besides, this objection to the jurisdiction on the ground of an adequate remedy at law, in the absence of a demurrer to the complaint, comes too late after the defendant has, by his answer, put himself upon the merits, and asked the court to determine the equities in the suit.

As applicable to this case, our view is well expressed in *Creely* v. *Bay State Brick Co.*, 103 Mass., 515, in which the court say: "An objection of this kind should have been made on demurrer, or at least should have been specifically relied upon in the answer, and not raised for the first time at the hearing upon pleadings which suggest no such ground of defense. Under such circumstances, the court could hardly do otherwise than retain the case, provided it is competent to grant relief, and have jurisdiction of the subject

matter, and of this we have no doubt." Moreover, if this is public land of the United States, subject to be taken under the homestead acts of congress, and the evidence shows that the plaintiff has taken the initial steps to homestead it, he has a right to the possession for the purpose of doing the required acts to secure his title from the government, and if he is prevented from taking possession by one without legal title, or of equal equitable claim, he may well ask a court of equity to put him in possession of his rights.

Let us then examine the merits of the respective claims of these parties, ascertain in what they consist, and determine in whom the superior equity resides to the possession of these lands. The donation law provides that the time limited in which claimants are required to give notice of their claims, shall be, and are hereby extended to the first of December, 1855, except where the Surveyor General shall request them so to do as above provided. John Myers, the original owner of the donation claim, and under whom the defendant claims to have equitable rights to the possession of the land in dispute, did file a corrected notification in the land office in November, 1855, in which he gives notice and a description of his land claim, but which does not include the land in question. But it is insisted that John Myers cultivated and resided upon this land at the same time, and with the same object he cultivated and resided upon the land described in his notification and patent; that he always claimed to own the same as a part and parcel of his donation claim, and that it was omitted to be described and included in his notification, and other title papers, by a mutual mistake of himself and the land officers of the government. There is no evidence to show that the mistake was *mutual*, or that John Myers made any mistake as to the land he intended to notify upon and occupy as a

donation land claim. The whole record evidence contradicts it. In his first notification, in June, 1855, he includes the land in dispute in his claim, but in the ensuing November he abandons the whole tract upon which he had notified and files a corrected notification, in which he specifically relinquishes the land in the original notification, a part of which was the land in dispute, and designates and describes other and different lands as his donation claim, and then makes oath to the truth and correctness of the statements therein contained. His certificate, issued upon final proof of resi· dence and cultivation, and made several years after, does not include this land, but conforms to the description in his last notification. The same is also true of the patent, which was issued several years subsequently; and thus it appears that during these different periods, so far as the record or evidence discloses, no effort whatever was made by John Myers to correct the mistake, if there was any, and make the description of the land correspond to what is claimed to be covered by his residence and cultivation.

There is evidence which indicates that he was aware that this land was not included in his donation claim before patent issued, and yet there is no evidence of any attempt to correct the mistake in the land department, or of any proceedings for that purpose, or that there was a mistake as alleged. The fact that John Myers had possession of the land and claimed to own it, in the absence of any evidence of a mistake in the description by which the land in dispute was omitted, and in the face of successive acts required to be taken to complete his title, some of which were under oath, and must have attracted his attention to the correctness of the facts sworn to, and which professed to contain an accurate description of his donation claim and did not include this particular land in controversy, certainly cannot be

held to have the effect to create any legal or equitable rights or interests in this land in favor of Myers and against the United States.

The fact that he claimed there was a mistake in not including this land in his description of his donation claim, without any evidence to correct it on his part at the land office, or to show how it occurred, and opposed as it is by the notice which he gave according to the requirements of the donation law, and reinforced by the sanctity of an oath, and all the successive acts at wide intervals, by which he secured and the government confirmed his title by patent, with an allegation in the defense that the matter was now pending before the land department for correction; and without any proof offered on that subject, will require more and better proof to convince us of the existence of such a mistake, than his mere claim that such a mistake was made, although he held possession of such land.

In the absence of proof of such mistake as alleged, he and those who succeeded to his possession, including the defendant, have only such title as is derived from occupancy. Indeed, in the discussion, the facts seem to be conceded to be with the plaintiff, and the main effort was directed to showing that his remedy was at law and not in equity. According to the evidence, this is public land of the United States, subject to be taken under the acts of congress as homestead, and which the plaintiff has taken the necessary preliminary steps to secure as a homestead; but he is prevented by the defendant from taking possession of it, and not having the legal estate he is compelled to resort to a court of equity to put him in possession of his rights, in order that he may proceed to complete his residence and cultivation, and thus secure the legal title to the land. The right of possession of the plaintiff for the purpose of homestead is a

valuable right which equity will protect, and the facts in the case showing that the plaintiff is prevented from taking possession by the defendant, who has no legal or equitable title, the decree of the court below is affirmed.

Decree affirmed.