Argued 9 January; decided 25 March, 1901.

## BROWNING v. LEWIS.

[64 Pac. 304.]

| | |
|---|---|
| 39 | 11 |
| h41 | 135 |
| 39 | 11 |
| 42 | 57 |
| e42 | 58 |
| 39 | 11 |
| 45 | 131 |
| 39 | 11 |
| 46 | 115 |

CONCLUSIVENESS OF FINDINGS ON APPEAL.

1. Where the trial court heard the witnesses its findings of fact will not usually be disturbed.

IRRIGATION—MEASUREMENT OF WATER DIVERTED.

2. The quantity of water appropriated by a riparian owner will usually be measured by the capacity of his ditch at its smallest point (*Coventon* v. *Seufert*, 23 Or. at p. 554, cited), but this general rule may be modified by the use of the water at a particular place; thus, in a case where most of the diverted water was consumed between the point of diversion and a flume of smaller dimensions than the ditch, used to span a gulch, the quantity appropriated should be determined by the capacity of the ditch at its smallest part above the flume.

INJUNCTION AGAINST TRESPASSERS*—PUBLIC LANDS.

3. Courts of equity will enjoin mere trespassing on public lands occupied by actual settlers when the threatened injury affects the substance of the estate, without waiting for an adjudication of the title at law—and this rule applies alike to mining and water rights.

CONSTRUCTION OF DEED.

4. Where the deed of a right of way for a ditch over a person's land tapping a stream above the point of the landowner's diversion of the water thereof made no provision that the grantees were to have the use of all the water of such creek during the mining season, it was evident that the grantor intended to reserve the use of the water usually entering his ditch during that season.

From Josephine : HIERO K. HANNA, Judge.

This is a suit by L. N. Browning against L. A. Lewis and W. H. Hampton to enjoin interference with the flow of water in the channel of Grave Creek, a nonnavigable stream, to plaintiff's premises. The transcript shows that plaintiff is the owner of a farm in Josephine County, through which said creek flows in a westerly direction in well-defined banks ; that in the spring of 1870 he constructed a dam therein, and by means of a ditch diverted water therefrom, which he has since continuously used

---

*NOTE.—Previous Oregon decisions on this question are *Kitcherside* v. *Myers*, 10 Or. 21; *Jackson* v. *Jackson*, 17 Or. 110; *Ewing* v. *Rourke*, 14 Or. 514; *Hindman* v. *Rizor* (*arguendo*), 21 Or. at pp. 116, 117; *Allen* v. *Dunlap*, 24 Or. 229; *Bishop* v. *Baisley*, 28 Or. 119; *Muldrick* v. *Brown*, 37 Or. 185; *Parker* v. *Furlong*, 37 Or. 248.

—REPORTER.

for irrigation; that in the winter of 1879 and 1880 the water so diverted was used to propel a lathe, and in the winter of 1893 and 1894 to separate gold from dirt hauled from his mine to the ditch, and that in the spring and fall of 1897 and 1898 he permitted his son and another person to use it to operate an arrastre when not needed for irrigation; that the defendants, in 1895, dammed said creek above plaintiff's point of diversion, and, having secured a deed from the latter of a right of way, dug a ditch across his land, whereby they diverted and used during the winter or mining season a large quantity of water. The plaintiff alleges in the complaint that he is the owner of three hundred and fifty acres of arid land in said county; that in 1870 he made a prior appropriation of three hundred inches of water from Grave Creek, which he has since continuously used for mining, milling, domestic, and agricultural purposes; that in the summer and fall of 1897, and in April, 1898, while he was using the water of said stream, the defendants unlawfully diverted all the water therefrom, to his damage; and that, if the interruption is permitted to continue, it will result in his irreparable injury.

The defendants deny the material allegations of the complaint, and aver in their answer that in 1895 they purchased the Columbia Mine, constructed a ditch thereto from said creek, and diverted about three thousand five hundred inches of water, which they use in operating said mine; that on July 19, 1895, the plaintiff executed to the defendant L. A. Lewis a deed for the right of way for their ditch across his premises, at which time he represented to them that he did not claim the water of said creek, except for the purpose of irrigating the improved portion of his land, which consists of about sixty acres, requiring about one inch of water to the acre; that said representations were made for the purpose of inducing

the defendants to purchase said right of way, and that, relying thereon, they constructed the ditch ; that, prior to securing plaintiff's deed, they became the owners by purchase of all the water rights upon said creek, except for the purpose of irrigation ; that they aré now entitled to the use of said water during the mining season, which begins about October 1 and ends about June 20 of each year ; and that the plaintiff, since the execution of said deed, has increased the size of his ditch, and now uses water conducted therein for the purpose of mining. The reply having put in issue the allegations of new matter in the answer, the testimony was taken before the court, which found that plaintiff was a prior appropriator of the water of said creek, and entitled to one hundred and eighty inches thereof for mining, milling, domestic, and agricultural purposes as a first right upon said stream, and by its decree perpetually enjoined the defendants from interfering in any manner with the flow of that quantity in the channel of said stream to the head of plaintiff's ditch ; from which decree the defendants appeal.                                             AFFIRMED.

*Mr. Austin S. Hammond*, for appellants.

*Messrs. Geo.W.* and *Wm. M. Colvig*, for respondents.

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1.   The answer admits plaintiff's right to the use of water from Grave Creek for irrigation, but denies that he is entitled to more than sixty inches thereof for that purpose, and it is contended by defendants' counsel that the court erred in awarding him a greater quantity than thus conceded. The testimony shows that plaintiff has in cultivation about sixty acres of land, all which is irri-

gated from the ditch, and about fifty acres of pasture, which the water therefrom will cover ; but.it does not appear what quantity is necessary to irrigate said land successfully. In the absence of such testimony, the court determined the measure of plaintiff's right from a consideration of the testimony respecting the capacity of his ditch. Several of the defendants' witnesses testify that the plaintiff, by annually cleaning out his ditch, had very much enlarged it ; but the latter and several of his witnesses say that he caused to be removed only the silt deposited therein from the operation of placer mines on the creek above the point of his diversion, and that the capacity of his ditch was not increased beyond what it had originally been. The question in relation to any change in the condition of plaintiff's ditch is one of fact to be determined from a preponderance of the testimony, and, as the court below saw the witnesses, and heard them testify respecting this matter, the finding that the ditch had not been enlarged, or its capacity increased, will not be disturbed.

2. The defendants called one J. S. McCall, an experienced civil engineer, who measured plaintiff's ditch, and testified that he computed its capacity, and ascertained that it was capable of conducting one hundred and eighty inches of water, miners' measurement. The testimony, however, shows that near the lower line of plaintiff's land the water diverted by him is conducted for a short distance in a flume, the capacity of which is not equal to that of the ditch. But, as the plaintiff uses the greater portion of the water in irrigating his land above the flume, the quantity required for irrigation will not be gauged by the capacity of the lower conduit, but by the size of the smallest space in the upper part of the ditch : Kinney, Irr. § 230 ; *Coventon* v. *Seufert*, 23 Or. 548 (32

Pac. 508.)   McCall's testimony concerning the capacity of plaintiff's ditch was apparently the only careful estimate made by any witness produced by either party at the trial, and, the court having adopted his computation, which we believe to be correct, and the quantity of water awarded reasonably necessary for irrigation, the measure thereof will not be diminished.

3.   It is contended by defendants' counsel that the evidence shows that when plaintiff diverted the water of Grave Creek the rights of a lower riparian proprietor had attached thereto, so that the stream was not then flowing through public land, and, this being so, the water thereof was not subject to appropriation, and, the plaintiff having used the water only one mining season to operate a lathe, and one winter to wash dirt that had been hauled to the ditch, his conceded right to the use thereof acquired by prescription should be restricted to purposes of irrigation ; and hence the court erred in decreeing him its use for mining or milling purposes.   The testimony relied upon to establish this theory is as follows : The plaintiff, on cross-examination, in answer to the question, "What year did you say you first went there on Grave Creek ?" replied, "I first appropriated that water in the spring of 1870, and I have used it ever since. Q. Who was living there on Grave Creek, besides you, at that time ?   A. Well, my father and my family, and Mr. Trustee was a partner of mine at the time I lived there, and Mr. Harkness was living below me.   Q. Did he have land upon the creek there, too ?   A. Yes, sir ; he had land right below me."   It may well be doubted whether this testimony is sufficient to show that Harkness was a riparian proprietor on Grave Creek, for in common parlance it is often said of a person, in alluding to his habitation, that he lives on a certain creek, when

his land, if he have any, may not border thereon, mean-
ing thereby that he lives in the valley of that stream.   If
the questions and answers adverted to were as explicit
in this respect as that of this witness on a prior cross-
examination, when, in referring to Grave Creek, he, in
answer to the question, "Does your pasture border on
the creek ?" said :  "Yes, my farm borders on the creek.
In fact, I own part of the creek along there,"—the inquiry
would be freed from all uncertainty.   Giving to his testi-
mony, however, every reasonable intendment from which
it may be inferred that Harkness owned land that bor-
dered upon Grave Creek when plaintiff diverted the water
thereof, can the defendants successfully invoke the rule
for which they contend ?   It will be remembered that
they allege in the answer that prior to securing plaintiff's
deed they became the owners by purchase of all the water
rights upon said creek, except for the purpose of irriga-
tion, and that they are now entitled to the use of the
water during the mining season.   No evidence was of-
fered, however, tending to show that they had secured
a right to divert or use the water of Grave Creek for any
purpose, and, so far as the record of this case is con-
cerned, they are mere trespassers.

The defendants having no apparent right to the water,
and not having adversely used it for the statutory period,
can they be permitted to question plaintiff's right to the
use of the water on account of such private ownership
of land below his claim, and thus deprive him of said
use for milling and mining, unless continued by him ten
years for those purposes?   While the rule is quite uni-
form that, to warrant relief by injunction, the party
aggrieved must show a satisfactory title to the right
involved, and, if such title be denied, or in doubt, a
perpetual injunction will generally be refused against a
defendant in possession until the complainant's title is

established at law, yet this court has repeatedly held that an injunction was properly issued to protect the rights of a settler upon the public domain against the claim of a mere trespasser when the threatened injury to the estate would be irreparable, without first trying the title at law : *Kitcherside* v. *Myers*, 10 Or. 21 ; *Jackson* v. *Jackson*, 17 Or. 110 (19 Pac. 847); *Hindman* v. *Rizor*, 21 Or. 112 (27 Pac. 13); *Allen* v. *Dunlap*, 24 Or. 229 (33 Pac. 675). In *Cardoza* v. *Calkins*, 117 Cal. 106 (48 Pac. 1010),— a suit to enjoin the diversion of the waters of certain gulches,— where the evidence showed without substantial conflict that plaintiffs were in the actual and peaceable enjoyment and possession of all the waters of the gulches through their ditch at the time of defendants' diversion thereof, and disclosed no better right in the defendants, it was held that the prior actual possession of the plaintiffs was sufficient to entitle them to an injunction as against the defendants. To the same effect, see *Utt* v. *Frey*, 106 Cal. 392 (39 Pac. 807). The rule in ejectment is that the plaintiff must recover, if at all, upon the strength of his own title ; but his prior possession of real property for any length of time is *prima facie* evidence of title, and sufficient to entitle him to a judgment therefor against a mere volunteer or trespasser : *Oregon Ry. & Nav. Co.* v. *Hertzberg*, 26 Or. 216 (37 Pac. 1019). The rule, upon principle, must be the same in equity, and hence, the plaintiff having made a prior use of the water of the creek for milling and mining, his right to continue such use, as against the defendants, who, so far as the record herein shows, are mere volunteers, can not be disturbed unless the plaintiff, by his conduct, has forfeited such right.

The defendant Hampton testifies that when the plaintiff executed the right of way deed the latter represented

39 Or.—2.

to him that he claimed the use of the water so diverted
for irrigation only. The plaintiff, however, denies that
he ever made any such representation. The question
thus involved was one of fact which the court was called
upon to decide from the contradictory testimony of the
witnesses, and its finding that plaintiff never made any
such statement to the defendant being reasonably de-
ducible from the whole testimony will not be set aside.

4. The plaintiff, on July 10, 1889, filed in the office of
the county clerk of Josephine County a notice of which
the following is a copy :

"Notice is hereby given that I have dug a ditch in
sections 8 and 9, and claim for irrigation purposes the
first right of three hundred inches of the water of Grave
Creek which is run in a ditch on the north side of Grave
Creek. The head of said ditch is in section 9, township
34 south, range 5 west, about two hundred yards above
the Esther Quartz Mill. I have used said water along
the line of said ditch nineteen years."

This notice is a circumstance tending to corroborate
Hampton's testimony, but we think if it had been in-
tended that the defendants were to have the use of all
the water of said creek during the mining season, some
mention thereof would have been made in the deed exe-
cuted by the plaintiff. That deed, however, having con-
tained no recitals to that effect, it is evident, we think,
that plaintiff intended to reserve the use of the water
flowing in his ditch during the mining season. It fol-
lows from these considerations that the decree is affirmed.

AFFIRMED.