### McCALL *v.* PORTER.

[70 Pac. 820, 71 Pac. 976.]

WATERS—ESSENTIALS OF APPROPRIATION.

1. The vital features of an appropriation of water from a public stream are its diversion from the natural channel and its application to some useful purpose, and it is immaterial how the water is caused to reach the place of application, whether by a ditch tapping the stream at a distant point, or by building up the banks at low points, or by closing natural outlets, and thereby retaining the water in a solid body to a point of diversion nearer the place of use.

PRIORITIES AS BETWEEN SUCCESSIVE APPROPRIATORS.

2. Appropriators of the waters of a stream, whether as riparian owners or owners by diversion, have priority of right in their chronological order of appropriation, the later appropriator being limited to rights not interfering with those of the earlier appropriator.

PRIORITIES AS BETWEEN SEVERAL APPROPRIATORS.

3. As between some of several appropriators, the one showing the earlier appropriation is entitled to maintain it without showing his rights as to other claimants not parties to the litigation.

DEFECTIVE PLEADING—WAIVER BY PLEADING OVER.

4. In the absence of preliminary objections to a pleading every reasonable inference will be invoked to support it after the trial has commenced, the rule being the same whether the objection is made to the evidence as it is produced or by a motion after the trial is over. An answer in which prior appropriation of the waters in question by defendant's grantor is not directly alleged is still sufficient, in the absence of a motion or demurrer, when it is therein stated that defendants and their grantors had, since prior to the

42 OR.—4

obtaining by plaintiffs of any right to such waters, maintained dams along and upon the banks of the stream for the purpose of increasing the flow of water in the main channel, and had during such time continuously used the waters thus confined for irrigating land owned by them below the points where such dams had been maintained.

From Lake: Henry L. Benson, Judge.

This is a suit by Cynthia I. and W. H. McCall against James C. and Josiah Porter to restrain the defendants from interfering with the flow of water through what the plaintiffs designate as the eastern or McCall branch of Buck Creek, a natural water course, heading in a spur of the Yampsay Mountains, and flowing in a northerly and easterly direction through Silver Lake Valley, in Lake County. Soon after it reaches the valley, it divides into numerous branches, one of which flows through the defendants' land in a well-defined channel, 6 or 8 feet wide and 2 or 2½ feet deep, carrying about 44 inches of water. In the spring or flood time the stream overflows its banks, inundating and irrigating the surrounding country. At other seasons of the year the water is diverted by means of dams and ditches, and thus used for irrigation purposes. The defendants' land is in the west half of section 4, and the plaintiffs are the owners of the larger part of section 3, lying east thereof. The plaintiffs contend that Buck Creek divides into two channels near the upper end of defendants' land, one flowing easterly through land owned by the plaintiffs, and that they have used the waters thereof as riparian proprietors for irrigating purposes during the fourteen years last past. In April, 1900, the defendants constructed a rock dam, at the head of what the plaintiffs call the eastern channel of the stream, thereby diverting the water therefrom and compelling it to flow down the main channel. The object of this suit is to enjoin the defendants from maintaining such dam or dike, on the ground that it wrongfully and unlawfully interferes with plaintiffs' rights as riparian proprietors. The complaint alleges the plaintiffs' ownership of the land in section 3; that Buck Creek is, and ever since the memory of man has been, a natural stream of water; that it divides into two separate and distinct channels at a point on the land of defendants; that the eastern

channel thereof runs through and abuts upon all the lands belonging to the plaintiffs; that about the 1st of March, 1900, the defendants constructed a dam at the head of this channel, and thereby prevented the water from flowing down the same, —and prays for the relief above mentioned. The defendants, by their answer, deny that Buck Creek divides into two channels at the point designated in the complaint, or that there is a natural stream of water flowing from such point over and across their land, and down onto the land of the plaintiffs, and for an affirmative defense they plead—*first,* the statute of limitations; and, *second,* in substance, that for more than seventeen years prior to the commencement of this suit the defendants, their grantors and predecessors in interest, have been using and occupying the land now owned by them, and during such time they have cultivated it, and by means of irrigation have raised large and valuable crops thereon; that the land is arid, and will not produce crops successfully without irrigation; that the waters of Buck Creek naturally flow, when unobstructed, down to, upon, and over their land and naturally irrigate the same; that, in addition to such natural flow, the defendants and their grantors, during the time mentioned, have placed and maintained dams in the banks and along the natural channel of the stream, to assist and increase the flow of water therein, and by this means have used during all the time of the occupancy by themselves and their grantors 300 inches of water for irrigating purposes; that the point mentioned in the complaint as the division of the stream into two separate channels is but a break in the bank, and all that the defendants have ever done to such break was to prevent it from washing out to such an extent as to destroy the natural channel, and thus compel the water to flow over and through their land in its natural channel; that, in addition to the natural irrigation and the use of the water of the stream by means of dams, they have, at stated dates during 1889 and 1890, appropriated therefrom through ditches 30 inches of water for use on their land; that all the appropriations, diversions, and use of the water as alleged in the answer are necessary and required for the suc-

cessful cultivation of the land, and by means thereof the defendants have been able to raise valuable crops thereon. The reply put in issue the material allegations of the answer, and upon the trial a decree was rendered in favor of the plaintiffs, from which the defendants appeal.          Reversed.

For appellants there was a brief over the names of *W. J. Moore* and *Spencer & Raker,* with an oral argument by *Mr. John E. Raker.*

For respondents there was a brief and an oral argument by *Mr. Charles A. Cogswell.*

Mr. Justice Bean delivered the opinion.

There are substantially three defenses set up in the answer: (1) That what plaintiffs designate as the eastern or McCall branch of Buck Creek is not a natural water course; (2) that their cause of suit is barred by the statute of limitations; and (3) that the defendants are entitled by prior appropriation to all the water that will flow within the banks of Buck Creek at the alleged point of division, when the banks are maintained at a uniform height.

The question as to whether there ever was a natural stream of water flowing from the land of defendants down to the land of plaintiffs is difficult to solve from the testimony in the record. The evidence upon that point is conflicting and unsatisfactory. Many of the witnesses testified with a map or plat before them, to which they and counsel referred, pointing out and designating certain places thereon; and, while testimony so taken is intelligible to the persons present, it is not always so to an appellate court, compelled to rely upon the record. Mr. Moore, however, a surveyor and engineer of intelligence, who made a careful survey about the time the suit was begun, testified that he found a small ditch or channel, about two feet wide and two feet deep, leading from the rock dam east for about nine chains, when it disappeared, and the water spread out over the defendants' meadow in a pond or swale some four chains wide and a few inches deep; that about five chains further east the water, or a portion of it, gathered into another

ditch or channel, perhaps a foot wide, which continued for 4½ chains, when it again spread out over the meadow in a shallow pond or pool five or six chains wide.   About eleven chains further east there was another channel, two feet deep and four feet wide, formed abruptly, which continued down to the county road that leads north through the center of section 4. He gave no testimony as to the condition of the country from that point on down to the plaintiffs' land, but the county surveyor, called by them as a witness, testified that there was a well-defined channel leading from the county road down through the east half of section 4 to the plaintiffs' land. Whether such a water course can be denominated a "natural stream," within the meaning of that term as applied to riparian rights, or whether it is to be considered as a mere break in the bank or high-water channel, is involved in considerable doubt.

But it is not necessary to decide that question, as the evidence clearly shows defendants' right by prior appropriation to such of the water as would naturally flow from Buck Creek through the ditch or channel described.   The land now owned by them was formerly swamp or overflowed land, granted to the state by congress in 1860.   About the year 1877 one M. P. Martin made application to the state to purchase the land, and received a certificate therefor, which, in January, 1885, he assigned and transferred to W. C. Martin, to whom the state made a deed the same year.   At the same time the deed was made, and for some time prior thereto, the latter Martin was and had been in possession of the premises, which he had inclosed, and on which he was using the water flowing in Buck Creek in the necessary irrigation of the same.   The land now owned by the plaintiffs was then unoccupied public land, belonging either to the state or the general government.   The evidence shows that the earliest possible settlement thereon or acquisition of any rights thereto by any of plaintiffs' predecessors in interest was in July or August, 1886.   Martin's occupancy of and title to his land was therefore prior in time to any rights acquired by the plaintiffs or their predecessors.

The evidence also shows that he had diverted all the waters of the so-called eastern or McCall branch by means of a sod or dirt dam at the head of the alleged channel prior to 1886, which he used in irrigating his land, and that such use was continued by the defendants after they purchased the property down to 1900, when they put in the rock dam. Mr. Egan, a witness for the plaintiffs, stated that he was acquainted with the Martin land in 1876; that Martin had a dam in the bank of Buck Creek at the point where the rock dam was subsequently located, and used the water of the stream in irrigating the land belonging to him below that point. Warren Duncan, another witness for plaintiffs, testified that Martin had a dam at the same place in 1887, when he sold to the present defendants; that the dam was constructed of dirt and manure, and that it prevented any of the water from going east; and that he saw Martin use the water for irrigating purposes. James Sullivan said that he knew the Martin land in 1873 and 1874, and saw the dam in Buck Creek while Martin owned and was in possession of the land; that the dam was higher than the creek bank, and was at the same place where the rock dam was afterward constructed. George C. Duncan testified that he was on the land in 1881 or 1882, and that Martin showed him a sod dam he had put in to keep the water from flowing east toward the property now owned by the plaintiffs; that in the spring of 1901 witness was up to the rock dam, and it was at the same place where he saw the sod dam in 1881 or 1882. The witnesses Hayes, McLin, and Wallace, testified to substantially the same facts. S. A. D. Porter stated that Martin irrigated his land in section 4 from 1881 to 1886 with water from Buck Creek; that during that time he maintained a dam in the east bank of the stream, and no water went down toward McCall's; that without such dam he could not have used the water for irrigation; and that it was constructed and maintained for that purpose. The defendants both testified that from 1887, when they purchased from Martin, down to 1900, they continued to maintain the dam in the bank of the stream the same as Martin had done prior to that time, and that the rock dam built in 1900 was at

the same place and no higher than the sod dam previously maintained by them and Martin. None of this evidence is controverted, so we have as an established fact in the case that from 1874 or 1875 down to the time the rock dam was constructed by the defendants, in 1900, the defendants and their predecessors in interest continuously maintained a dam at the head of the so-called eastern or McCall branch of the stream, sufficient to turn all the water down the main stream that would otherwise naturally flow out through such alleged channel or branch; that by means of such dam the defendants and their predecessors in interest were enabled to and did use the water for irrigating purposes and for the successful cultivation of their land.

1. The water was thus diverted and applied to a useful purpose, and this constitutes an appropriation, within the meaning of the doctrine of prior appropriation. The method by which it was diverted or appropriated is not material. "The true test of appropriation of water, in its legal aspect," says Mr. Long, "is the successful application of the water to the beneficial use designed; the method of diverting or carrying it or of making the application being wholly immaterial. It is not even necessary that ditches be used. Thus, if a dam or other contrivance will suffice to turn the water from the stream, and moisten the lands sought to be cultivated, this is sufficient, although no ditch be needed or constructed": Long, Irr. § 49. And in Thomas v. Guiraud, 6 Colo. 530 (which was cited with approval by this court in Nevada Ditch Co. v. Bennett, 30 Or. 59, 45 Pac. 472, 60 Am. St. Rep. 77 and note), it is said by Mr. Justice Helm, in speaking on this question, that "If a dam or contrivance of any kind will suffice to turn water from the stream and moisten the lands sought to be cultivated, it is sufficient, though no ditch is needed or constructed. Or if land be rendered productive by the natural overflow of the water thereon, without the aid of any appliances whatever, the cultivation of such land by means of the water so naturally moistening the same is a sufficient appropriation of such water, or so much thereof as is reasonably necessary for such use. The true test

of appropriation of water is the successful application thereof to the beneficial use designed, and the method of diverting or carrying the same, or making such application, is immaterial.''

In making the diversion or in conducting the water appropriated, use may be made of dry ravines or natural depressions, and, indeed, a natural stream may be so used: *Simmons* v. *Winters,* 21 Or. 35 (27 Pac. 7, 28 Am. St. Rep. 727); Pomeroy, Rip. Rights, § 48; *Butte C. & Ditch Co.* v. *Vaughn,* 11 Cal. 143 (70 Am. Dec. 769); *Richardson* v. *Kier,* 37 Cal. 263. So that Martin and the defendants are not prevented from acquiring the right to the use of the water by prior appropriation merely because they used a part of the natural channel of Buck Creek to convey the water diverted by them from the so-called eastern or McCall branch. All that is necessary to make a valid appropriation is that there be an actual diversion of the water from the natural channel or other source of supply, with an intent to apply it to some beneficial use, followed by an actual application to the use designed within a reasonable time: *Low* v. *Rizor,* 25 Or. 551 (37 Pac. 82); *Nevada Ditch Co.* v. *Bennett,* 30 Or. 59 (45 Pac. 472, 60 Am. St. Rep. 777 and note). The appropriation depends upon the actual capture of the water and its application to some useful or beneficial purpose, and not upon the mode or method by which the appropriation or diversion is made. If one prevents a stream from overflowing its banks at the low places by means of dams or dikes, or by the same means prevents the water from flowing out through a natural channel or depression leading off from the main stream, thus confining it to the channel and conveying it down to his land below, where he uses it for necessary and reasonable irrigation, his acts will amount to as valid an appropriation of the water so diverted or confined as if he had in fact conducted it to his land through an artificial ditch or conduit. By the construction and maintenance of a dam at the point where plaintiffs allege that the stream divides, Martin and his successors in interest manifested an unmistakable intent to take and use the water which otherwise would have gone down the alleged eastern channel, and, as they succeeded

in applying the water to the use designed, there was such an appropriation as is contemplated by law.

2. Nor is it material, so far as the rights of the parties to this suit are concerned, whether others had acquired rights to the use of the water of the stream, either by appropriation or as riparian proprietors, prior and superior to those of the defendants. The foundation of the doctrine of prior appropriation of water is, prior in time, prior in right, and therefore he whose appropriation is first in time acquires rights against subsequent appropriators, locators, or grantees, to the extent of his appropriation. The waters of a natural stream are subject to successive appropriations, and, so long as the subsequent appropriators do not injure or impair the rights of those prior to them, they may use as much water as they choose. There may thus be numerous and different appropriators of the waters of the same stream; the rights of each depending, as against the others, on the date or time of his appropriation. One who acquires rights subsequent to another cannot question the prior appropriator's right to the amount of water actually diverted and used by him on the ground that such an appropriation may interfere with some one else's rights. The validity of such an appropriation as against subsequent owners does not depend upon, and is not affected by, the fact that there may be prior vested rights on the stream, either above or below: *Simmons* v. *Winters,* 21 Or. 35 (27 Pac. 7, 28 Am. St. Rep. 727); *Carson* v. *Gentner,* 33 Or. 512 (52 Pac. 506, 43 L. R. A. 130); *Browning* v. *Lewis,* 39 Or. 11 (64 Pac. 304); Long, Irr. § 52; Kinney, Irr. § 181; *Saint* v. *Guerrerio,* 17 Colo. 448 (35 Pac. 335, 31 Am. St. Rep. 320); *Creek* v. *Bozeman Waterworks Co.* 15 Mont. 121 (38 Pac. 459.) ''Priority of appropriation, where no other title exists,'' says Mr. Chief Justice Lewis, in *Proctor* v. *Jennings,* 6 Nev. 83 (3 Am. Rep. 240), ''undoubtedly gives the better right. And the rights of all subsequent appropriators are subject to his who is first in time. But others coming on the stream subsequently may appropriate and acquire a right to the surplus or residuum, so the rights of each successive per-

son appropriating water from a stream are subordinate to all those previously acquired, and the rights of each are to be determined by the condition of things at the time he makes his appropriation. So far is this rule carried that those who were prior to him can in no way change or extend their use to his prejudice, but are limited to the rights enjoyed by them when he secured his. Nor has any one the right to do anything which will, in the natural or probable course of things, curtail or interfere with the prior acquired rights of those either above or below him on the same stream. The subsequent appropriator only acquires what has not been secured by those prior to him in time. But what he does thus secure is as absolute and perfect, and free from any right of others to interfere with it, as the rights of those before him are secure from interference by him.''

3. And so it was held in the recent case of *Browning* v. *Lewis,* 39 Or. 11 (64 Pac. 304), that a defendant whose rights were inferior and subsequent to the plaintiff's could not question the latter's use of the waters of a stream on the ground that others may have a right thereto superior to that of the plaintiff. The rights of the parties to this suit must be determined, therefore, with reference to the priorities as between themselves, without regard to the rights of persons not parties to the suit, and who, of course, cannot be affected in any way by the decree. From this point of view, and under the law and the facts, we are of the opinion that the defendants have shown a prior right by appropriation, as against the plaintiffs, to the use of the water claimed by them, and may maintain a dam in the stream at the height of the present rock dam for the purpose of diverting the same. For these reasons, the decree of the court below will be reversed, and the complaint dismissed.

REVERSED.

Decided 30 March, 1903.

ON PETITION FOR REHEARING.

MR. JUSTICE BEAN delivered the opinion.

4. A careful re-examination of the record has only confirmed

the views heretofore expressed. The principal complaint seems to be that the decision is put on a question not in issue; counsel for plaintiffs insisting that the answer does not allege a prior appropriation of the waters of Buck Creek by Martin, the defendants' grantor. The defendants, after describing in their answer the lands owned and possessed by them, allege—

"That the whole of said lands are valuable agricultural and farming lands; that for more than seventeen years next preceding the filing of the complaint herein the defendants and their grantors have possessed, occupied, cultivated, used, and improved all of the aforesaid lands, and during all of said times have annually harvested therefrom large and valuable crops of hay, grain, and vegetables, and have pastured large numbers of horses and cattle thereon; that the climate in which said lands are situated is arid, and irrigation is necessary thereon during the months of April, May, June, July, August, September, and October of each year, in order to produce thereon a valuable or any crops, and that said months constitute the irrigating season in the district in which said lands are situated; that with proper irrigation said lands yield annually large and valuable crops of the aforesaid staple products, which without such irrigation they would not do, but would become barren, sterile, and worthless; that immediately west of south of said lands there is a spur or branch of the Yampsay Mountains, known as the 'Buck Creek Range,' upon and among which springs and melting snow give rise to and form a stream commonly called 'Buck Creek,' which flows and has flowed always in a north and northeasterly direction to and upon defendants' said lands; that the said Buck Creek is the same and identical natural stream described in the plaintiffs' amended complaint herein; that said Buck Creek has a natural and well-defined bed and banks to and upon the lands of the defendants herein described, and that the natural channel of said Buck Creek from its source reaches and extends to defendants' said lands, and that the waters of said Buck Creek naturally flow, when unobstructed in their natural channel, to, upon, and over the lands of the defendants, and naturally irrigate and water the said lands of the defendants, and have so flowed in their natural channel and course ever since the memory of man, and now do in their natural channel flow down said Buck Creek to, upon, and over the lands of the said defendants hereinbefore described, and that by reason of such natural flow, seepage, and percolation, irrigate and moisten

and make fertile and valuable the said lands, and that the defendants' said lands are riparian lands on and to the said Buck Creek; that, in addition to such natural flow as aforesaid, the defendants and their grantors, at various points and places on their said lands above described, have placed in the natural channel of said Buck Creek, at various points on their said lands, small dams, and made head ditches therefrom, to assist and increase the irrigation of said lands, in addition to the natural flow thereof, and thereby have made fertile and valuable and irrigated the said lands with the natural flow of the waters of said Buck Creek, and have thus used of the waters of said Buck Creek, for the irrigation of their said lands, during all the times of their occupancy and use thereof, by themselves and their grantors, a sufficient amount thereof to irrigate about 650 acres of land, and that said quantity of land last named has been thus irrigated of and from the natural flow of the waters of Buck Creek as aforesaid during all of said time, and that the necessary amount of water thus to irrigate said land is about 300 inches, measured under a six-inch pressure, and that the use of the waters of Buck Creek, as aforesaid, through their natural flow, is a reasonable and necessary use thereof; that at the point and place designated in plaintiffs' amended complaint herein is but a break in the bank of the natural channel of Buck Creek, and that all the defendants, or either of them, have had or done to the said break, as well as their grantors, was to keep and prevent said break from washing out to such an extent as to destroy the natural channel of said Buck Creek, and to prevent the waters of Buck Creek from flowing on and over the other portions of defendants' said lands in the natural channel thereof as hereinbefore described; that said break is not a natural channel or a branch of Buck Creek; and that there was no natural channel of Buck Creek at the time of the commencement of this suit, or at any time before, extending to or upon the lands, or any part of the lands, of plaintiffs, described in the amended complaint herein.''

The substance of the defense so alleged is that for more than seventeen years prior to the commencement of the suit the defendants and their grantors have possessed, occupied, and used the land now owned by them, through which Buck Creek flows, and have maintained dams in the stream at various points on their land, including the place designated as the east-

ern or McCall branch, to keep the banks from washing out and destroying the natural channel, and to assist and increase the flow of water therein, and by means of such dams have been able to and have used 300 inches of water for necessary irrigating purposes, and thereby have raised annually large and valuable crops on their land. Now, Martin, as the evidence shows, is the grantor of the defendants; and, although the answer does not directly allege a prior appropriation by him, it is alleged that the defendants and their grantor (who was Martin) had for more than seventeen years prior to the commencement of the suit, and therefore prior to the acquisition by plaintiffs of any alleged rights to the waters of the so-called eastern or McCall branch, maintained dams along and in the bank of the creek for the purpose of increasing the flow of water in the main channel, and that the water thus confined to the channel is and has been used for necessary irrigation. This is an evident attempt by defendants to plead a right to the waters of the stream by appropriation prior in time and superior in right to that acquired by the plaintiffs; and, although the answer is, no doubt, defective because it does not allege in direct terms an appropriation by Martin, the defect is one of form, and not of substance, and, as no objection was made thereto either by motion or demurrer, was waived by pleading over: *Creecy* v. *Joy*, 40 Or. 28 (66 Pac. 295). Evidence was offered and admitted on the trial bearing on the question of Martin's appropriation. The court below, as appears from its opinion, deemed it an issue in the case, and much space is devoted to its discussion in the defendants' brief, so that we feel justified in holding that an appropriation of the waters of Buck Creek by the defendants and their grantor, prior in time to the acquisition of any rights thereto by the plaintiffs, is substantially pleaded as a defense to this suit; and the fact that the evidence was admitted over the objection of the plaintiff does not change the rule, as the same presumption will be indulged in to support the pleadings as if the objection came after trial: *Specht* v. *Allen*, 12 Or. 117 (6 Pac. 494) ; *Currey* v. *Butcher*, 37 Or. 380 (61 Pac. 631) ;

*Creecy* v. *Joy*, 40 Or. 28 (66 Pac. 295) ; *Patterson* v. *Patterson,*
40 Or. 560 (67 Pac. 664).

The third separate defense set up in the answer relates to
alleged appropriations made by the defendants personally
after they acquired title from Martin. Nor can we agree with
counsel that there is no evidence to show that Martin actually
appropriated and used the waters diverted from the so-called
McCall branch by his dam for irrigating purposes. The record
is voluminous, and the testimony in some respects confusing,
and it may be that the effect of the evidence of one or two of
the witnesses is stated in the opinion more strongly than a
critical examination of their testimony would seem to justify.
But however that may be, it quite clearly appears from all the
testimony that from 1881 down to the time of the commence-
ment of the suit a dam had been maintained at the head of
the so-called McCall branch, and the water thereby diverted
from such branch, and caused to flow down the main channel,
and it has been used by Martin and the defendants for the
necessary and reasonable irrigation of their land.

A contention is made that, prior to the construction of the
rock dam by the defendants, enough water flowed down the so-
called McCall branch to supply the plaintiffs' needs, and
therefore they could not complain of the construction or main-
tenance of the sod dam. The stream at the point where the
sod dam was located is only 2 or 2½ feet deep, and such dam
was built as high as the banks, so that any water that went
down from that point toward the McCall place must have been
from the overflow. The evidence shows that the rock dam
complained of is located at the same place where the dirt dam
was; that it is no higher, and therefore can prevent no more
water from flowing down toward McCall's than the dirt dam
did, so that, if plaintiffs have had less water since the construc-
tion of the rock dam than before, it was not because of such
dam, but perhaps, as intimated by some of the witnesses, be-
cause settlers on the stream above have been diverting and
using larger quantities of water than heretofore, and conse-
quently the overflow has been lessened. The petition for
rehearing is therefore denied.          Rehearing Denied.