Argued Oct. 30, decided Nov. 14 ; rehearing denied Dec. 12, 1911.

## BORMAN *v.* BLACKMON.

[118 Pac. 848.]

EQUITY—JURISDICTION—RIGHTS TO PUBLIC LANDS.

1. Equity has jurisdiction to protect unpatented rights in public lands, where the parties have no legal title, not having performed all the acts to entitle them to a patent from the government.

WATERS—WATER RIGHTS—ABANDONMENT—ELEMENTS.

2. Intent is essential to abandonment of a water right.

WATERS—"WATER COURSE"—WHAT CONSTITUTES.

3. A gulch through which water flows from about March 1st until August, being derived from melting snows and springs, constitutes a "water course," waters of which are subject to appropriation.

WATERS—"WATER COURSE"—WHAT CONSTITUTES.

4. Whenever surface water flows in one continuous, well-marked channel, it becomes a "water course," if this regularly recurs each season.

WATERS—WATERS APPROPRIABLE.

5. Under Section 6673, L. O. L., providing that ditches constructed to use waste, spring, or seepage waters shall be governed by the same laws relating to priority of right as ditches constructed to use waters of running streams, waters flowing through a gulch, and derived from melting snows and springs, are subject to appropriation.

WATERS—WATERS APPROPRIABLE.

6. Under Act. Cong. March 3, 1877, c. 107, 19 Stat. 377 (U. S. Comp. St. 1901, p. 1548), making the waters of lakes, rivers, and "other sources of water supply" upon public land subject to appropriation, waters running through a gulch, and derived from melting snows and spring water, are subject to appropriation.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. JUSTICE BURNETT.

In this suit the substance of the complaint is that E. W. Borman is the owner of certain placer mining claims in the Virtue mining district in Baker County, Oregon, subject only to the paramount title of the United States. The predecessors in interest of the plaintiffs, about the year 1884, appropriated the water of a running stream, known as Quartz gulch, by damming the stream on the land now claimed by the defendant Gertrude E. Blackmon, and constructing therefrom a ditch by which they conducted the water about two miles to the placer grounds now owned by the plaintiffs. These placers are valuable for the gold contained there, and the water is necessary for the proper operation of the mine. The plaintiffs claim by *mesne* conveyances from those predecessors in interest, and assert that they are now the owners of the ditch and the water right. They further aver that about March 12, 1910, the defendants went upon said ditch, cut the bank, and turned the water back into the natural channel of the

stream; that they threaten to continue to, and, unless restrained, will do so, all to the irreparable damage of the plaintiffs. They ask for a decree against the defendants, enjoining them from interfering in any way with the maintenance and operation of the ditch. The two defendants deny the allegations of the complaint, except that the defendant Gertrude E. Blackmon admits having prevented plaintiffs from excavating and constructing a ditch through her premises, and admits having turned the water out of the ditch and down the gulch. The defendant C. S. Blackmon avers that all he did in the way of cutting or destroying the ditch was done as the agent of his codefendant, Gertrude E. Blackmon. She alleges that about September 15, 1908, she entered upon the southwest quarter of section 26, township 9 S., range 41 E., and filed thereon a desert land entry, and at all times since then had been in the lawful and exclusive possession thereof, claiming by that title. She says that Quartz Gulch passes over a portion of the land above described; that it is a dry gulch, affording no stream of water, and that no water naturally runs through it, except only such surface water as comes from melting snows in the bare hills adjacent thereto. She also alleges that during the month of March, 1910, the plaintiffs wrongfully and unlawfully, and against her will and consent, entered upon her land, placed a dam in Quartz gulch, and wrongfully, by means of a ditch constructed there, turned the water upon her land, to her damage by way of soaking it and softening up the soil, and she prays for an injunction against the defendants, forbidding them from entering upon her land or constructing or operating a ditch there. The new matter in the answer was traversed by the replies. After a hearing upon the pleadings and the evidence reported by the referee, the court below rendered a decree, in effect establishing plaintiffs' right to maintain and operate the ditch, but restricting their use

of the water to the surplus above ten miner's inches, under a six-inch pressure, calculated after excluding therefrom water drained from an adjacent mine. The defendants were enjoined from interfering with the prescribed operation of the ditch, and the plaintiffs were enjoined from using any water, except as above described. Both parties appeal.                                    AFFIRMED.

For plaintiffs and appellants there was a brief with an oral argument by *Mr. Julius N. Hart.*

For defendants and cross appellants there was a brief with an oral argument by *Mr. Woodson L. Patterson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1, 2. The parties seem to be occupants of the public lands of the United States, not having performed all the conditions by which the legal title could be derived from the general government. Their holdings are unpatented; and hence their right to the land is such as equity will protect, without sending them in the first instance into a court of law: *Kitcherside* v. *Myers,* 10 Or. 21; *Watts* v. *Spencer,* 51 Or. 262 (94 Pac. 39) ; *Browning* v. *Lewis,* 39 Or. 11 (64 Pac. 304). The equitable title of the plaintiff Borman to the placers mentioned in the complaint is not seriously questioned by the defendants. As to the ditch itself, they claim that, however much it may have been used in former years, yet the plaintiffs have abandoned the same. By a clear preponderance of the evidence, it is, in our judgment, established as a fact that the plaintiffs and their predecessors continuously, since the year 1884, have annually during the spring months conducted water through the ditch from Quartz Gulch to the placers in question, with the exceptions of the years 1907 and 1908. In those years, owing to the unusual light fall of snow during the preceding winters, there was no water worth mentioning in Quartz Gulch;

certainly too small an amount to conduct by the ditch to the mines of the plaintiff Borman. Several witnesses on behalf of the plaintiffs testified positively as to their use of the water thus described. The only opposition by the defendants to this testimony was from witnesses who had lately observed the ditch, and testified that it had the appearance of being nearly filled up, and in many places sagebrush had grown therein to the height of a foot and a half to two feet; but these conditions are readily accounted for by the fact that, owing to the scarcity of water in Quartz Gulch for the two years mentioned, the ditch could not be used. The evidence fails to disclose any intent on the part of the plaintiff to abandon the water right in question. An intent is a necessary element in the matter of abandonment: *Watts* v. *Spencer,* 51 Or. 262 (94 Pac. 39) ;*Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728).

3. The principal contention of the defendants is that there is no stream in Quartz Gulch. They maintain, in effect, that only from a water course can water be appropriated, within the meaning of the law, and that Quartz Gulch is not a water course. In other words, they say, in substance, that it is a mere temporary conduit for surface water, which is never the subject of appropriation in the legal sense. The situation, as detailed by the witnesses, concerning the gulch mentioned is that its watershed is composed of barren hills, upon which no vegetation grows, save a lone juniper tree and the sagebrush, which is the natural product of the land in that vicinity. Above the desert entry of the defendants, the gulch consists of several confluent prongs, down which the water from melting snows flows in the springtime, and after the branches unite the water flows in a clearly marked channel or course several miles to the northeastward, where it empties into Ruckles Creek. It is fed by melt-

ing snows in the springtime, beginning usually about the latter part of February or early in March, and continuing generally until some time in the early part of June, about which time the positive flow ceases, but afterwards there remain some springs in various parts of the gulch which continue until some time in August, when they also fail. The standard definition of "water course" in this State appears in *Simmons* v. *Winters,* 21 Or. 35 (27 Pac. 7: 28 Am. St. Rep. 727), where Justice LORD says:

"That a water course is a stream of water usually flowing in a particular direction, with well-defined banks and channel, but that the water need not flow continuously—the channel may sometimes be dry; that the term 'water course' does not include water descending from the hills down the hollows and ravines, without any definite channel, only in times of rain and melting snow, but that, where water, owing to the hilly or mountainous configuration of the country, accumulates in large quantities from rain and melting snow, and at regular seasons descends through long, deep gullies or ravines upon the lands below and in its onward flow carves out a distinct and well-defined channel, which even to the casual glance bears the unmistakable impress of the frequent action of running water, and through which it has flowed from time immemorial, such a stream is to be considered a water course and to be governed by the same rules."

4. Tested by this standard, we have in the case at hand the elements of a water course. After the stream has dried up, we can go upon the ground and say, "Here it flowed; here is the track of the water; in this course the stream habitually runs." This happens on the watershed in question, not from a cloud-burst, but occurs every spring from the descent of the melted snow. The water of all streams is derived, directly or indirectly, from surface water which falls, in the beginning, from the clouds; but, whenever in its journey to the sea it flows in one continuous, well-marked channel, it becomes a water course,

provided this regularly recurs at every returning season. An instructive case on this subject is *Rait* v. *Furrow*, 74 Kan. 101 (85 Pac. 934: 6 L. R. A. [N. S.] 157), where the authorities are quite ably collated by Chief Justice Johnston.

5. Another view of the subject of appropriation of water may be found upon the consideration of Section 6673, L. O. L., as follows:

"All ditches now constructed, or hereafter to be constructed, for the purpose of utilizing the waste, spring, or seepage waters of the State, shall be governed by the same laws relating to priority of right as those ditches constructed, for the purpose of utilizing the waters of running streams; *provided,* that the person upon whose lands the seepage or spring waters first arise, shall have the right to the use of such waters."

This section is a substantial copy of Section 2269, Mills' Annotated Statutes of Colorado, from which, evidently, our legislature has taken the section of our code above quoted, and which was construed by the Supreme Court of Colorado, in the case of *Denver Ry. Co.* v. *Dotson,* 20 Colo. 304 (38 Pac. 322). In that case the plaintiff constructed on government land a ditch, by which he diverted the water from a certain canyon, and used it for irrigating land occupied by himself. The canyon was not a running stream, but was fed entirely by the rainfall in the surrounding hills. By the use of the water so collected, the plaintiff irrigated a large portion of his land. The court there held that the appropriation was a valid one, notwithstanding the fact that the source of the appropriation was not a running stream. This construction of the statute appears to be reasonable, and has our approval.

In the case at bar, it is not pretended that the waters in question had their rise upon the land of the defendants, but only that the Quartz Gulch passes through a portion of the land, so that the defendants are not within

the proviso allowing the persons upon whose lands the seepage or spring waters first arise to the entire use of the said waters. Hence, if it were not clearly established that Quartz Gulch was a water course for the purpose of appropriation, still, under our statute, water flowing there, even from surface water collected in the place, would be the subject of appropriation.

6. Again, the right of the defendants, prescribing in the name of the defendant Gertrude E. Blackmon, dates only from September 15, 1908. She entered upon the land under the act of Congress of March 3, 1877, c. 107, 19 Stat. 377, 6 Federal Statutes Annotated 392 (U. S. Comp. St. 1901, p. 1548). In Section 1 of that act, it is provided "that the right to the use of water by the person so conducting the same on or to any tract of desert land * * shall depend upon *bona fide* prior appropriation and such right shall not exceed the amount of water actually appropriated and necessarily used for the purpose of irrigation and reclamation and all surplus water over and above such actual appropriation and use together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes subject to existing rights." By this act the general government made the water, not only of lakes and rivers, but also other sources of water supply upon the public lands, and not navigable, the subject of appropriation. The conditions about the watershed of Quartz Gulch make it clearly a situation where the water is the subject of appropriation, under the liberal terms of the act of Congress referred to. Indeed, the defendants do not claim the right in their answer to appropriate any water whatever. They only complain of the act of the plaintiffs in digging a ditch across their premises; but we have seen that the plaintiffs and their predecessors

acquired this right prior to the entry of the land by the defendants, and, in any event, according to the terms of the statute, the right of the latter to the use of the water on the desert land claim depends upon a *bona fide* prior appropriation. They took the land burdened with the condition in which they then found it, one of which was the right of the plaintiffs and their predecessors to conduct water from Quartz Gulch, through the ditch, to the placers mentioned. In the absence of any claim made by the defendants to any portion of the water, the circuit court was in error when it undertook to appor- . tion the water between the plaintiffs and the defendants. The plaintiffs were entitled to the full amount of their original appropriation of the waters of Quartz Gulch. The plaintiffs are entitled to the decree for an injunction as prayed for in their complaint. No question has been made here about the matter of damages on either side. The court below allowed costs and disbursements to neither party. This was within the discretion of the court, and we are not prepared to say that that discretion was abused.

The decree thus modified will be affirmed.

AFFIRMED.