**Charles SCHRAIER, Appellant,**

v.

**Walter J. HICKEL, Secretary of the Interior.**

**No. 22616.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 24, 1969.

Decided July 22, 1969.

Mr. Max Barash, Washington, D. C., for appellant.

Mr. S. Billingsley Hill, Atty., Dept. of Justice, with whom Messrs. Roger P. Marquis and Herbert Pittle, Attys., Dept. of Justice, were on the brief, for appellee. Mr. Clyde O. Martz, Asst. Atty. Gen., at the time the record was filed, also entered an appearance for appellee.

Before PRETTYMAN, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal from an order dismissing a complaint filed by appellant Schraier which sought to review a decision by the Interior Department rejecting appellant's application filed in August 1958, pursuant to the Mineral Leasing Act, 30 U.S.C. § 181 ff, for a non-competitive oil and gas lease on some 2,000 acres of the bed of the Kenai River in Alaska.[1] We affirm.

Appellant was embroiled in administrative proceedings that stretched over a period of nine years. A 1959 decision of the Anchorage, Alaska, land office rejecting his offer on the ground that the water areas described therein were navi-

---

1. The Secretary of the Interior had issued a public notice that the land was available for leasing under the Mineral Leasing Act. There were several simultaneously filed offers, a public drawing was held, appellant's offer was drawn first, and he was awarded priority to receive a lease.

gable, was reversed by the Bureau of Land Management in a 1961 decision that this determination was unsupported by the record then assembled. A 1963 decision of the Land Office, rejecting the offer on the basis of a defective description of the area sought for leasing, was reversed by a 1964 Bureau decision that the description was sufficient under the regulations in effect when the offer was filed.

For the first seven and a half years there was no disclaimer of Federal jurisdiction over the land. However, in 1966, the State of Alaska interposed objection to the issuance of a Federal lease. On May 27, 1966, the Land Office rejected appellant's offer on the ground that the Kenai River is navigable, so that title to its bed is in the State of Alaska, and not subject to leasing by the Federal Government. That result was affirmed by the Bureau on April 7, 1967.

On appeal to the Secretary, the Assistant Solicitor of Land Appeals issued an opinion November 21, 1967, which affirmed the Bureau's decision. The opinion may be summarized as follows:

There is no need to decide whether the Kenai River is navigable or whether appellant was correct in contending that the Land Office had no authority to make a determination as to navigability.—

(a) If the Kenai River is navigable, the Department lost authority to issue leases under the Mineral Leasing Act as to land in the bed of a navigable river when Alaska was admitted to statehood on January 3, 1959, *see* Presidential Proclamation 3269, 24 Fed.Reg. 81 (Jan. 1959), and thus took title to lands underlying inland navigable waters, *see* United States v. Oregon, 295 U.S. 1, 14, 55 S.Ct. 610, 79 L.Ed. 1267 (1935).[2]

(b) If it is not navigable, title to the riverbed is in the State of Alaska by virtue of patent or tentatively approved selections made pursuant to the Alaska Statehood Act of July 7, 1958, 72 Stat. 339.

If the river is navigable, the conclusion of the Department is clearly sound and need not be further discussed. If we take as a possible premise that the river is not navigable, we must consider the effect of the Statehood Act. That act granted the State of Alaska the right to select over 102 million acres of vacant, unappropriated, and unreserved public land of the United States in Alaska. Section 6(g) provides that on tentative approval of the selected lands equitable title passes to the State.[3]

Appellant argues that the State selections were a nullity because at the time they were made in 1959 and 1962 the Kenai River was part of a moose range by virtue of E.O. 8979, December 16, 1941, 6 F.R. 6471. The connecting thread is the premise that title to a moose range remained in the United States. We see no basis for judicial interposition to set aside the Department's result either by virtue of its opinion that the land was excluded from the Kenai National Moose Range in a boundary adjustment by Public Land Order 3400, May 28, 1964, 29 F.R. 7094, or by virtue of its processing the State's selection without the formality of refiling.

In essence the issue is whether Alaska's selections under the Statehood Act are inapplicable to this land because of the pendency of appellant's application

---

2. The opinion noted that the Act of July 3, 1958, 72 Stat. 322, which overturned the principle previously adopted by the Department that it had no authority under the Mineral Leasing Act to lease land in the bed of a navigable river, provided that its provision would cease to apply to any such lands on transfer of such lands to any State created out of the Territory of Alaska.

3. Section 6(g) provides, *inter alia:*
Following the selection of lands by the State and the tentative approval of such selection by the Secretary of the Interior or his designee, but prior to the issuance of final patent, the State is hereby authorized to execute conditional leases and to make conditional sales of such selected lands.

under the Mineral Leasing Act. We think not.

Section 6(b) of the Alaska Statehood Act, permitting the taking of public lands by the State, has the proviso:

> That nothing herein contained shall affect any valid existing claim, location, or entry under the laws of the United States, whether for homestead, mineral, right-of-way, or other purpose whatsoever, or shall affect the rights of any such owner, claimant, locator, or entryman to the full use and enjoyment of the lands so occupied.

The legislative history does not spell out the meaning of "claims" in extenso.[4] But it is fair to say that references in Committee Reports to the existing "claims" that would limit the selection authority of the new State were generally in terms that contemplated that the State's authority would be subject to "existing rights" and "established interests."[5] The only references in hearings were to mining claims, homestead entries, leases, permits, licenses, outstanding prescriptive rights and easements.[6]

▇▇▇ This language in § 6(b) is inapplicable to an application for an oil and gas lease under the Mineral Leasing Act of 1920. That Act provides that lands subject to disposition under the Act, which are believed to contain oil or gas deposits, *"may* be leased by the Secretary of the Interior." The Act directed that if a lease was issued, it had to go to the first qualified applicant, but "it left the Secretary discretion to refuse to issue any lease at all on a given tract." Udall v. Tallman, 380 U.S. 1, 4, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).[7] The fact that the Bureau published a notice that it would receive offers to lease did not preclude a later exercise of discretion to decline to lease. An application for lease, even though first in time or drawn by lot from among simultaneous offers, is a hope, or perhaps expectation, rather than a claim.

Of course, as appellant points out, the clause in the Statehood Act excepting "existing valid claims" means something less than a "vested right." That is established by Stockley v. United States, 260 U.S. 532, 43 S.Ct. 186, 67 L.Ed. 390 (1923). But *Stockley* involved a person who made a homestead entry, complied with the homestead law, submitted final proof and paid the required fees. The law was of a type that granted a right to title or other interest subject only to meeting the statutory requirements. The Secretary had no discretion whether to grant or deny a privilege, but had the function only of determining whether an existing privilege granted by Congress had been properly invoked; he was under a mandatory duty to honor the Congressional grant if the applicant met

4. A critical study of the statehood bill inserted in the Congressional Record by Senator Butler in 1952, included a complaint that the bill does not define "claim." 98 Cong.Rec. 1514 (1952).

5. As to forerunner provisions, *see* S.Rep. No.1929, 81st Cong., 2d Sess. 11 (1950); S.Rep.No.315, 82d Cong., 1st Sess. 15 (1951); H.R.Rep.No.88, 84th Cong., 1st Sess. 48 (1955). As to the 85th Congress, 2d Session, *see* H.R.Rep.No.624, 19, 20 (1957).

6. *See, e. g.,* Hearings on H.R. 2535 and 2536 Before the House Committee on Interior and Insular Affairs, 84th Cong., 1st Sess. 240–244, 254–257 (1955); Hearings Before the Senate Committee on Interior and Insular Affairs, 83d Cong., 2d Sess. 242–243 (1954).

7. Duesing v. Udall, 121 U.S.App.D.C. 370, 372, 350 F.2d 748, 750 (1965), cert. denied, 383 U.S. 912, 86 S.Ct. 888, 15 L.Ed. 2d 667; Haley v. Seaton, 108 U.S.App. D.C. 257, 262, 281 F.2d 620, 625 (1960); Dunn v. Ickes, 72 App.D.C. 325, 326, 115 F.2d 36, 37–38 (1940), cert. denied, 311 U.S. 698, 61 S.Ct. 137, 85 L.Ed. 452; McKay v. Wahlenmaier, 96 U.S.App.D.C. 313, 324–325, 226 F.2d 35, 46–47 (1955); United States ex rel. Roughton v. Ickes, 69 App.D.C. 324, 327–328, 101 F.2d 248, 251–252 (1938); *see also* Southwestern Petroleum Corp. v. Udall, 361 F.2d 650, 654 (C.A. 10, 1966); Pease v. Udall, 332 F.2d 62 (C.A. 9, 1964).

the conditions specified.[8] Indeed *Stockley* involved not only a claim "which, upon full compliance with the land laws, would ripen into a title" (*see* 260 U.S. at 544, 43 S.Ct. 189), but also an entry that conferred a present, exclusive right of possession.

In contrast the Mineral Leasing Act gives such discretion to the Secretary, to accept or reject an application, that this filing constitutes a "proposal" rather than a "selection."[9] Nor can it be successfully asserted that the Secretary exercises his discretion whether or not to lease when he gives notice for filing and processing applications. "The filing of an application which has not been accepted does not give any right to a lease, or generate a legal interest which reduces or restricts the discretion vested in the Secretary whether or not to issue leases for the lands involved." Duesing v. Udall, *supra*, note 7, 121 U.S. App.D.C. at 372–373, 350 F.2d at 750–751. Similarly the Secretary does not lose his ultimate authority because the Department officials assumed that appellant would be awarded a lease if he were found to qualify in all respects under pending regulation.

Of course an applicant for a lease under the Mineral Leasing Act is entitled to certain legal protections. He has a legal right that the cognizant officials may not disregard his application on a basis other than that permitted by law. The same may be said of anyone desiring to contract with the United States—he has no right to a contract, but he has a right to an equal opportunity to contract that is not negatived by resort to illegal procedures or standards.[10]

An applicant under the Mineral Leasing Act may have the further right to a lease where he is entitled to a lease over anyone else under the law and the Secretary has exercised his discretion to execute a lease.[11] But his proposal does not rise to the level of "claim" or "right" within the saving clause of the Statehood Act where there has been no such determination to lease.

We are not oblivious to the time, energy, and presumably money in the form of expenses, that have been devoted to appellant's applications, or to the long years consumed by Department officials on premises later shown to be without merit.[12] We do not think these establish "existing valid rights or * * * equitable claims subject to allowance and confirmation." *See* 6(g) of the Statehood Act. We note that the term "equitable claims" phrase is defined in the last sentence of § 6(g), albeit without limitation, as applicable to one who will lose permits already granted, who owns valuable improvements put on the lands.

8. *Compare* Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742, (1921) ; United States v. Hughes, 11 How. 552, 13 L.Ed. 809 (1850) ; Carroll v. Safford, 3 How. 441, 11 L.Ed. 671 (1845) ; Lytle v. Arkansas, 9 How. 314, 13 L.Ed. 153 (1850) ; Cornelius v. Kessel, 128 U.S. 456, 9 S.Ct. 122, 32 L.Ed. 482 (1888) ; Chapman v. Santa Fe Pac. R.R. Co., 90 U.S.App.D.C. 34, 198 F.2d 498 (1951), cert. denied, 343 U.S. 964, 72 S.Ct. 1058, 96 L.Ed. 1361 ; McComas v. Northern Pac. Ry. Co., 82 Or. 639, 161 P. 562, 564, 162 P. 862 (1916).

9. To adopt the terms used in Wyoming v. United States, 255 U.S. 489, 496, 41 S.Ct. 393 (1921).

10. Gonzalez v. Freeman, 118 U.S.App.D.C. 180, 334 F.2d 570 (1964) ; Copper Plumbing & Heating Co. v. Campbell, 110 U.S. App.D.C. 177, 179–180, 290 F.2d 368, 370–371 (1961).

11. Barash v. Seaton, 103 U.S.App.D.C. 159, 256 F.2d 714 (1958) ; McKay v. Wahlenmaier, 96 U.S.App.D.C. 313, 226 F.2d 35 (1955).

12. We do not consider how the case would stand if an applicant offered to establish and did establish that his application was deliberately processed so as to deny him the benefit of a determination made reasonably and seasonably. There is no claim here that the Department's various determinations were not made by the official involved in a good faith, though mistaken, effort to apply the law.

This clause may have scope where there was physical possession or improvement by the equitable claimant or someone acting in his behalf. We do not think it can be extended to a lease applicant merely because he has incurred expense in support or defense of his application. It is commonplace for businessmen to apply time and money in furtherance of a proposal designed to please and persuade a prospective client or contractor. This may give rise to an expectation that cannot be interfered with by another without justification, but it does not give rise to even an equitable claim against the person to whom the proposal is made.

 Appellant claims that there is a source of leasing authority in an agreement made between the State of Alaska and the United States, acting through the Department of the Interior. The matter is discussed in the Department opinion. We agree with the conclusion that appellant cannot claim rights thereunder in opposition to the position of both parties to the agreement.

Although we come to deny appellant the relief sought, we wish to point out that we have not disposed of the case on the argument made by the government, that the mere fact that the Secretary has discretion whether or not to issue a lease suffices to establish that appellant has no enforceable right. The decision made by the Department was on legal grounds and not in exercise of some general discretionary authority under the Mineral Leasing Act. If these legal grounds were contrary to law appellant would have been entitled to a declaratory judg-ment saying so. Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320 (1939).[13]

Affirmed.

---

13. Whether this court would have been without jurisdiction to entertain such a complaint because of the absence of the State of Alaska as a party, a claim put forward on the theory that Alaska is an indispensable party, is a point we need not now resolve. For other cases where the indispensable party argument has been made without decision by the court, *see* Safarik v. Udall, 113 U.S.App.D.C. 68, 74, 304 F.2d 944, 950 (1962) ; Miller v. Udall, 113 U.S.App.D.C. 339, 341, 307 F.2d 676, 678, n. 2 (1961).

That a court may bypass a jurisdictional issue without decision and dispose of the case by a ruling on the merits, *see* Citizens for Allegan County, Inc. v. F.P.C., 134 App.D.C. 229, 414 F.2d 1125, fn. 16 (April 29, 1969) ; Pan American World Airways, Inc. v. C.A.B., 129 U.S. App.D.C. 159, 162, 392 F.2d 483, 486 n. 4 (1968).