**James W. McDADE, Plaintiff,**

v.

**Rogers C. B. MORTON, Defendant.**

**Civ. A. No. 2437–7.**

United States District Court,
District of Columbia.

Feb. 6, 1973.

James W. McDade, pro se.

Gerald S. Fish, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

CHARLES R. RICHEY, District Judge.

This case is before the Court on the parties' cross motions for summary judgment. There is no dispute as to any material or relevant fact. For the reasons hereinafter stated, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

### *Jurisdiction*

This action arises out of a complaint for judicial review of a decision of the Secretary of the Interior not to award Plaintiff certain oil and gas leases in the State of Louisiana under the Mineral Leasing Act of 1920 (41 Stat. 437, as amended; 30 U.S.C. Sec. 181 et seq.). Jurisdiction is based on 28 U.S.C. Sec. 1331(a) (Federal question; amount in controversy in excess of $10,000); and 28 U.S.C. Sec. 2201–2202 (Declaratory Judgments Act).

### *Factual Background*

On February 26, 1968, Plaintiff filed noncompetitive oil and gas lease offer ES 3624 in the Eastern States Land Office, Bureau of Land Management, pursuant to Section 17 of the Mineral Leasing Act, as amended, 30 U.S.C. § 226. The offer described, by metes and bounds, lands represented to constitute that portion of section 17, Township 23 South, Range 33 East, Louisiana Meridian, Plaquemines Parish, Louisiana, not overlapped or invaded by section 18 and land added thereto by accretion or dereliction.

On March 18, 1968, the Chevron Oil Company filed lease offer ES 3673 for all of section 17, including that portion overlapped by section 18, and a parcel of land accruing by accretion or dereliction to section 17.

On May 17, 1968, Plaintiff filed lease offer ES 4167, which also described by metes and bounds lands represented to comprise the portion of section 17 not overlapped by section 18 and land accruing by accretion or dereliction. The offer differed from Plaintiff's earlier offer in its description of the accreted land. Thereafter, on August 13, 1968, Plaintiff filed lease offer ES 4498, again purporting to describe the part of section 17 not overlapped by section 18, plus land accruing by accretion or dereliction, and providing yet a different description of the accreted area. On August 14, 1968, Plaintiff filed a fourth lease offer, ES 4501, for the same land, once more, altering the description of the accreted land.

On January 24, 1969, Texaco, Inc., filed lease offers ES 5377, 5378, 5379, and 5380. Each of the offers described by metes and bounds the portion of section 17 not overlapped by section 18, and each described by metes and bounds a parcel of land accruing to section 17 by accretion or dereliction.

On September 24, 1969, the Eastern States Land Office issued a decision setting forth the status of each of the nine lease offers just described, noting that each of the lease offers embraced substantially the same surveyed land and land accreted thereto.

Based on this report the land office found that:

1. Plaintiff's lease offer ES 3624 adequately described the portion of section 17 not overlapped or invaded by section 18, and a lease may be issued pursuant thereto for that land, but the offer must be rejected as to the accreted land for failure to describe the accreted area adequately;

2. Plaintiff's lease offer ES 4167 adequately described the accreted area, and a lease may be issued pursuant to the offer for that land, but, in the event a lease is issued pursuant to offer ES 3624, offer ES 4167 must be rejected as to the land covered by the lease;

3. Chevron's lease offer ES 3673, as well as Plaintiff's offers ES 4498 and 4501, did not adequately describe the accreted land and in the event of issuance of a lease pursuant to lease offer ES 3642, must be rejected in their entirety; and

4. Texaco's lease offers ES 5377, 5378, 5379, and 5380 contain adequate descriptions but, in the event leases are issued pursuant to lease offers ES 3624 and 4167, must be rejected.

The decision allowed Plaintiff 30 days within which to execute and return stipulations accepting terms imposed by the Corps of Engineers, Department of the Army, as a condition to consenting to the issuance of leases, and it allowed each offeror, within 30 days after receipt of the decision, to appeal to the Director, Bureau of Land Management, from the decision. Plaintiff filed the required stipulations in the land office on October 15, 1969.

Neither Plaintiff nor Chevron appealed from the land office decision. Texaco, however, filed a notice of appeal to the Director on October 24, 1969.

On December 16, 1969, Texaco filed with the Director, Bureau of Land Management, a statement of reasons for its appeal, alleging therein facts tending to demonstrate that section 17, Township 23 South, Range 33 East, and the accretions thereto, are within the known geologic structure of a producing oil field. On January 29, 1970, the Regional Geologist, Geological Survey, Tulsa, Oklahoma, acting on behalf of the Director, Geological Survey, advised the manager of the Eastern States Land Office that section 17 and the accretions thereto were determined, as of November 9, 1969, to be within the undefined known geologic structure of the Southeast Pass field.

In a decision dated March 19, 1970, the Office of Appeals and Hearings, Bureau of Land Management, acting for the Director, Bureau of Land Management, vacated the land office decision of September 24, 1969, and rejected all nine lease offers for the reason that the lands applied for are within the known geologic structure of a producing oil field and are, therefore, not subject to noncompetitive leasing and for the additional reasons that each of the lease offers failed to describe all of the accreted land available for leasing.

Plaintiff appealed to the Secretary of the Interior from the Bureau's decision, charging that the Office of Appeals and Hearings had committed error in:

1. Finding that Plaintiff should have described additional accreted land;

2. Permitting Texaco, Inc., to appeal from a decision by which it was not adversely affected;

3. Failing to recognize unjustifiable delay by the land office in the processing of plaintiff's lease offers; and

4. Holding that lands determined, subsequent to the filing of a noncompetitive oil and gas lease offer but prior to issuance of a lease to be within the limits of a known geologic structure, are subject only to competitive leasing. Neither Texaco nor Chevron appealed from the Bureau's decision.

By its decision of September 10, 1971, the Board of Land Appeals, speaking for the Secretary of the Interior, affirmed the Bureau's decision upon a determination that:

1. Texaco's appeal from the land office decision was properly entertained by the Director, Bureau of Land Management;

2. Lands on a known geologic structure of a producing oil or gas field are not subject to noncompetitive oil and gas leasing; and

3. The filing of an offer for a noncompetitive oil and gas lease vests no rights in the offeror, and the determination, after the filing of a lease offer but before issuance of a lease, that land is within the limits of a known geologic structure precludes the issuance of a noncompetitive lease.

Finding the last point to be determinative of the matter, the Board did not consider the correctness of the Bureau's determination that plaintiff failed to describe all of the accreted land in section 17 available for leasing in accordance with the pertinent regulation.

On December 7, 1971, Plaintiff filed the Complaint herein, seeking judicial review of the Board's decision.

*Issues*

There are three basic issues presented by the parties' cross motions for summary judgment.

1. Did the Land Office decision of September 24, 1969 constitute formal acceptance of Plaintiff's lease offers and did that decision vest in Plaintiff any equitable right to receive the leases in question?

2. Was Defendant required under the provisions of the Mineral Leasing Act, as amended, and pertinent regulations thereto to award Plaintiff leases on a noncompetitive basis for lands which were discovered after filing but before acceptance to be within the limits of a known geologic structure and therefore statutorily subject only to competitive leasing?

3. Were the regulations complained of promulgated contrary to law?

*Discussion*

A. *The Land Office Decision of September 24, 1969 Did Not Constitute Acceptance of Plaintiff's Lease Offers, Nor Did It Vest in Plaintiff an Equitable Right to Receive a Lease*

 It is clear from the express language of Section 17 of the Mineral Leasing Act, as amended, 30 U.S.C. § 226, that public lands of the United States "which are known or believed to contain oil or gas deposits may be leased" [Sec. 226(a)] by the Secretary of the Interior and that, "if the lands to be leased are

not within any known geological structure of a producing oil or gas field, the person first making application for the lease who is qualified to hold a lease * * * shall be entitled to a lease of such lands without competitive bidding." [Sec. 226(c)]. The Courts have long construed these provisions as giving the Secretary broad discretion in the issuance of oil and gas leases, the only limitation upon his discretion (as to land which is not within any known geologic structure of a producing oil or gas field) being that, *if* the land is leased, it *must* be leased to the first person making application therefor who is qualified under the statute and applicable regulations to receive a lease. Udall v. Tallman, 380 U.S. 1, 4, 85 S.Ct. 792, 13 L. Ed.2d 616 (1965), rehearing denied, 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283; Duesing v. Udall, 121 U.S.App.D.C. 370, 372, 350 F.2d 748, 750 (1965); Pease v. Udall, 332 F.2d 62, 63–64 (C.A.9, 1964); Thor-Westcliffe Development, Inc. v. Udall, 114 U.S.App.D.C. 252, 254, 314 F.2d 257, 259 (1963), cert. denied, 373 U.S. 951, 83 S.Ct. 1681, 10 L.Ed.2d 706. Given this broad discretion of the Secretary and the explicit statutory limitation, the courts have consistently held that no right to receive an oil and gas lease is obtained by the filing of a lease offer, even though the offeror be the "first qualified applicant," and that the Secretary may determine at any time prior to the acceptance of a lease offer not to lease particular land even if offers for such land were filed long before the determination not to lease or were filed in response to a direct invitation to file. Udall v. Tallman, *supra*; Schraier v. Hickel, 136 U.S.App.D.C. 81, 83–85, 419 F.2d 663, 665–667 (1969); Duesing v. Udall, *supra*; Haley v. Seaton, 108 U.S. App.D.C. 257, 260–261, 281 F.2d 620, 623–624 (1960).

Moreover, a reading of the pertinent Department of Interior regulations and applicable case law quickly dispels Plaintiff's argument that the Eastern States Land Office decision of September 24, 1969 was a formal acceptance of his lease offers by the United States.

The regulations prescribing the procedures for obtaining a noncompetitive oil and gas lease provide, and provided at the time Plaintiff filed his offers, that:

> The United States will indicate its acceptance of the lease offer, in whole or in part, and the issuance of the lease by the signature of the appropriate officer thereof in the space provided. * * * [43 CFR 3111.1–1(c), formerly 43 CFR 3123.5(b), 29 F.R. 4511 (1964).]

No other manner has been provided, or recognized by any court, for the United States to indicate its acceptance of an oil or gas lease offer.

The Eastern States Land Office decision of September 24, 1969, did not purport to be, and cannot be construed as, an acceptance of any of Plaintiff's lease offers. The decision was issued under the heading "Lease Offer Status." By its terms the decision set forth the order of priority that would be recognized with respect to the nine lease offers filed for section 17; it pointed out defects in the land descriptions of some of the offers; and it required certain actions as a prerequisite to the issuance of any lease. A decision of such nature cannot be interpreted as an alternative form of lease offer acceptance on the part of the United States and cannot operate to overcome or restrict the Secretary's ultimate discretionary authority, at any time before acceptance, to reject a lease offer. Udall v. Tallman, *supra*.

B. *The Defendant Acted Properly in Denying the Award of a Noncompetitive Oil and Gas Lease for Land Determined to Be Within a Known Geologic Structure. The Status of the Land at the Time a Lease Offer Is Filed Does Not Control Under Present Regulations.*

The express wording of the Mineral Leasing Act, 30 U.S.C. § 226(a), (b) and (c), makes it clear that the Sec-

retary of the Interior may not, without competitive bidding, lease lands which are within a known geologic structure. The question presented here is what is the scope of the Secretary's authority where, after a lease offer has been filed but before acceptance, and upon receipt of new or additional information, the land described in the offer is transferred from the category of non-geologic structure to that of a known geologic structure of a producing oil or gas field.

Though the Mineral Leasing Act is silent on this precise question, Department of the Interior regulations exist directly on point. Under present regulations, in effect since 1967, Plaintiff clearly is not entitled to the leases he seeks. The regulations, in pertinent part, state:

> * * * When land is within the known geologic structure of a producing oil or gas field prior to the actual issuance of a lease, it may be leased only by competitive bidding * * *. [43 CFR 3101.1–1, formerly 43 CFR 3122.1, 32 F.R. 13324 (1967).]

> If, after the filing of an offer for a noncompetitive lease and before the issuance of a lease pursuant to that offer, the land embraced in the offer becomes within a known geological structure of a producing oil or gas field, the offer will be rejected and will afford the offeror no priority. [43 CFR 3110.1–8, formerly 43 CFR 3123.3(c), 32 F.R. 13324 (1967).]

C. *The Department's Regulations Complained of by Plaintiff Are a Lawful Administrative Interpretation and Implementation of the Mineral Leasing Act*

 Inasmuch as Plaintiff is clearly not entitled to the relief he seeks under the current Department regulations cited above, the only question that remains is whether the regulations are a lawful administrative interpretation and implementation of the Mineral Leasing Act.

To answer this question, an understanding of the history of Sec. 17 of the statute and pertinent regulations is necessary.

Shortly after passage of the Mineral Leasing Act in February of 1920, the antecedent of the regulations in issue here, and the express policy of the Department of the Interior was that no prospecting permit[1] could be granted "within the known geologic structure of a producing field even though such a status as to the deposits may have arisen only during the pendency of the application for a permit. . . ." Case of Wilmer Jeannette, 47 L.D. 582 (1920).

In April of 1921, under a new administration, Secretary of the Interior Albert B. Fall revoked the then existing regulation, reasoning that the regulation was not based under a mandatory provision of the statute and upon the premise that the rights of an oil and gas applicant were similar to those of a homestead entryman. [Instructions, 48 L.D. 98, 99 (1921)].

Although as early as 1951 there were doubts voiced in the Department as to the soundness of Secretary Fall's interpretation of the statute, then Solicitor Mastin G. White's opinion that the Department should abandon Secretary Fall's view and revert to its original position, was never promulgated and the Department continued for some 16 more years under the policy of Secretary Fall.

In September of 1967, Solicitor Frank J. Berry issued an opinion (74 I.D. 285) in which he concluded that the past practice of determining whether to lease land competitively or noncompetitively upon the basis of facts known at the time of the filing of a lease offer was clearly erroneous and contrary to the ordinary reading of the statute. Following

---

1. Prospecting permits were discarded by Congress by amendment in 1935 (49 Stat. 674). Thereafter all rights in public land oil and gas deposits were to be granted by lease.

this opinion the regulations were amended as hereinbefore cited.

■ It is well settled that courts are to show great deference to the administrative construction of a statute where the statutory language is reasonably susceptible to more than one interpretation. Udall v. Tallman, *supra,* 380 U.S. 16–18, 85 S.Ct. 792; Gulf Oil Corporation v. Hickel, 140 U.S.App.D.C. 368, 372, 435 F.2d 440, 444 (1970).

■ However, should an administrative statutory interpretation or regulation however long standing be clearly erroneous or contrary to the manifest intent of the statute it purports to construe or implement, such interpretation or regulation will not be upheld by a court. Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S. 39, 52–54, 60 S.Ct. 51, 84 L.Ed. 20 (1939), rehearing denied, 308 U.S. 637, 60 S.Ct. 258, 84 L.Ed. 529; District of Columbia v. Payne, 126 U.S.App.D.C. 47, 51, 374 F.2d 261, 265 (1966).

■ Nor is the administrative agency itself estopped by its former interpretation of a statute, however long standing, from correcting that which it presently feels to be clearly erroneous. As Mr. Justice Brennan, speaking for the Court, said in Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 183, 77 S.Ct. 707, 709, 1 L.Ed.2d 746 (1957):

> The Commissioner's earlier rulings were . . . based upon a mistake of law . . . .
>
> \* \* \* \* \* \*
>
> . . . The doctrine of equitable estoppel is not a bar to [his] correction . . . of [that] mistake of law. (Footnotes omitted).

As the Court of Appeals for this Circuit stated in Pennsylvania Water and Power Co. v. Federal Power Commission, 74 U.S.App.D.C. 351, 358, 123 F.2d 155, 162 (1941), cert. denied, 315 U.S. 806, 62 S.Ct. 640, 86 L.Ed. 1205 (quoting from Payne v. Houghton, 22 App.D.C. 234, 249, aff'd, Houghton v. Payne, 194 U.S. 88, 24 S.Ct. 590, 48 L.Ed. 888 (1904):

> \* \* \* [The succeeding heads of a department] have a right to reverse a practice, even long continued, when clearly convinced that it is founded on an incorrect interpretation of the law. Save in respect of a subject-matter finally closed and settled under the former practice, the decision on which that practice is founded contains no element of estoppel or *res judicata,* as the doctrines thereof are applicable in judicial proceedings.

Similarly, the Fourth Circuit has held that:

> \* \* \* An administrative agency, charged with the protection of the public interest, is certainly not precluded from taking appropriate action to that end because of mistaken action on its part in the past. National Labor Relations Board v. Baltimore Transit Co., 140 F.2d 51, 55 (C.A. 4, 1944), cert. denied, 321 U.S. 795, 64 S.Ct. 848, 88 L.Ed. 1084.

Applying this principle of law to the facts herein, the Court finds that not only were the 1967 regulations authorized under the Mineral Leasing Act but they clearly embody what the Court finds to be the correct interpretation of the literal, mandatory language of the statute, i. e. that lands within a known geologic structure of a producing oil or gas field *"shall* be leased . . . by *competitive* bidding." [30 U.S.C. § 226(b)]. (Emphasis Added).

As was stated by the Court of Appeals for this Circuit in District of Columbia National Bank v. District of Columbia, 121 U.S.App.D.C. 196, 198, 348 F.2d 808, 810 (1965):

> \* \* \* The plain meaning of the words is generally the most persuasive evidence of the intent of the legislature. The plain meaning doctrine must be given application, however hard or unexpected the particular effect, where unambiguous language calls for a logical and sensible result. \* \* \*

The unambiguous language of the Mineral Leasing Act states that leases for land within a known geologic structure of an oil or gas field *shall* be leased by *competitive* bidding. The logical and sensible regulatory result under such wording is to preclude any type of leasing other than by means of competitive bidding *whenever* it becomes apparent that the applied for leases involve lands within a known geologic structure. To hold otherwise would fly in the face of the "plain meaning" of the statute's words.

Accordingly, in light of the foregoing, it is, this 5th day of February, 1973,

Ordered, that Plaintiff's Motion for Summary Judgment be, and the same hereby is, denied; and it is

Further ordered, that Defendant's Motion for Summary Judgment be, and the same hereby is, granted.